1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **BYRON CHAPMAN,** | ) | **1:09-cv-1324  AWI SMS** |
| | ) | |
| **Plaintiff**, | ) | |
| **v.** | ) | **ORDER ON DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY** |
| **CHEVRON STATIONS, INC., dba** | ) | **JUDGMENT** |
| **Chevron Station #1553, and CHEVRON** | ) | |
| **U.S.A, INC.,** | ) | |
| | ) | (Doc. No. 27) |
| **Defendants.** | ) | |
| | ) | |

Plaintiff Byron Chapman ("Chapman") has brought this lawsuit against Chevron Stations,

Inc. and Chevron U.S.A., Inc. (collectively "Chevron").  The active complaint is the First

Amended Complaint ("FAC").  The FAC alleges violations of 42 U.S.C. § 12000 et. seq. (the

Americans with Disabilities Act) ("the ADA"), the California Civil Code, and the California

Health & Safety Code.  Chevron now moves for summary judgment.  For the reasons that follow,

the Court will grant Chevron's motion with respect to the ADA claims and decline to exercise

supplemental jurisdiction over the remaining state law causes of action.


## GENERAL BACKGROUND[1]

Chevron Station #1553 ("the Station") is located in Coalinga, California.  See DUMF 1.

The Station was constructed prior to the enactment of the Americans with Disabilities Act of

[1]"DUMF" refers to "Defendants' Undisputed Material Fact."  "PUMF" refers to "Plaintiff's Undisputed
Material Fact."

1990.  DUMF 2.  Chapman is physically disabled due to a spinal cord injury and uses a motorized wheelchair and an automobile with a lift system.  See DUMF 3; FAC 8; PUMF 61. Plaintiff resides in Dixon, California, which is more than 200 miles from the Station.  See DUMF 4.  Chapman visited the Station on three or four occasions, but at his deposition could not recall the day, month, or year of the visits.  See DUMF Nos. 46, 47.

Chapman filed this lawsuit in July 2009.  See Court's Docket Doc. No. 1.  Chapman filed the FAC on April 11, 2011.  See Court's Docket Doc. No. 21.  The FAC contends that Chapman experienced barriers at the gas station that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Station.  See FAC at ¶ 10.

On April 28, 2011, Chapman served Chevron with the Expert Report of Joe Card, who had conducted a site inspection of the Station on April 6, 2011.  See DUMF Nos. 8, 9.  Card's report identifies the following alleged barriers at the Station:

1.  Lettering on "Van Accessible" sign is too large;

2.  Curb ramp requires handrails;

3.  Portion of a walkway/"short cut" walkway is too narrow;

4.  There is a potentially misleading directional sign;

5.  Exterior restroom door requires too much effort/force to open;

6.  Lavatory does not have appropriate knee clearance;

7.  Water closet is not centered appropriately;

8.  Restroom sign requires an International Symbol of Access ("ISA");

9.  Gas pump sign for "additional assistance" should be relocated;

10.  Interior restroom sign requires ISA;

11.  Merchandise aisles width should be increased;

12.  Width should be increased at the end of a store aisle near a coffee island;

13.  ICEE cup lids are too high; and

14.  Asphalt concrete pathway may distort in the future.

See DUMF 10.  Of the barriers identified by Card, only the first barrier (the "Van Accessible" sign) is identified in the FAC.  Cf. DUMF 10 with FAC ¶ 10.

2

Darin O'Kelley, the maintenance and construction manager of Chevron, filed a declaration in support of the summary judgment motion. See Court's Docket Doc. No. 27-9 ("O'Kelley Dec."). In pertinent part, O'Kelley declares: (1) the "Van Accessible" sign has been changed so that the lettering of "Van" is 1 ½ inches and the lettering of "Accessible" is 1 inch; (2) the potentially misleading directional sign has been removed; (3) the exterior restroom door has been changed and requires less than 5 pounds of force to open; (4) the lavatory now has at least 27 inches of knee clearance from the floor to the sink bottom, and has at least 8 inches of knee clearance under the sink from a "front approach"; (5) the center of the front of the toilet has been reset to 18 inches, and the rear of the toilet is centered to less than 18 ¾ inches from the wall, which is the maximum adjustment possible without rerouting the toilet's sewer line; (6) an ISA has been mounted on the exterior and in the interior; (7) an "additional help" sign has been posted near the gas pump; (9) the width of the aisles has been adjusted to 44 inches; (10) the area near the coffee island (which is stationary and affixed to the store) has been adjusted to 33 inches by pushing the deli cooler flush to the wall, and the area measured by Card is otherwise accessible by 36 inch wide paths on two other sides of the coffee bar; (11) there is now a supply of medium and large ICEE lids at lower heights and underneath the ICEE dispenser; and (12) Chevron employees are available to provide assistance and reasonable accommodations to disabled customers, including retrieving merchandise and other items that may be outside a customer's reach. See O'Kelley Dec. ¶¶ 4-15. Additionally, pursuant to Court order, Chevron submitted an additional declaration and photographs that confirm the representations made in the O'Kelley Declaration. See Perkins Dec. & Exs. A-J.

## **LEGAL FRAMEWORK**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of

identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire, 210 F.3d at 1102-03. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

The opposing party's evidence is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d

4

1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the

opposing party's obligation to produce a factual predicate from which the inference may be

drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG

Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of

material fact does not spring into being simply because a litigant claims that one exists or

promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d

15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a

"motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or

'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427

F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate

circumstances to consider materials that are not properly brought to its attention, but the court is

not required to examine the entire file for evidence establishing a genuine issue of material fact

where the evidence is not set forth in the opposing papers with adequate references.  See

Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Gordon v. Virtumundo, Inc.,

573 F.3d 1040, 1058 (9th Cir. 2009); Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of

material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

**DEFENDANT'S MOTION**

*Defendant's Argument*

Chevron contends that the barriers identified by Card are either not ADA barriers, or the

barriers have been corrected and thus, claims based on the corrected barriers are now moot.

Because there are no ADA violations that can be remedied, the ADA claims should be dismissed

and the Court should decline to exercise jurisdiction over the state law claims.

In reply, Chevron also argues that a recent Ninth Circuit case, *Oliver v. Ralphs Grocery

Co.*, - - - F.3d - - -, 2011 U.S. 17022 (9th Cir. Aug. 17, 2011), makes clear that only barriers that

1   are identified/disclosed in a plaintiff's complaint are at issue in summary judgment.  Since only

2   one of the barriers identified by Card is in the FAC, summary judgment on each additional

3   barrier is appropriate.  Further, the one barrier that is identified by Card and in the FAC was

4   addressed by the Ninth Circuit, which held that such claims do not implicate the ADA.

5       *Plaintiff's Opposition*

6       Chapman argues that, with some exceptions, the barriers identified by Card are violations

7   of the ADA.  Further, there is insufficient evidence that the claims are moot.  There is no record

8   of Chevron obtaining building permits from the County of Fresno for any of the alleged barriers.

9   Chevron has refused additional inspections, and went so far as to obtain an order from the

10  Magistrate Judge which forbids additional inspections.[2]  Given this conduct and the absence of

11  building permits, Chevron has not adequately shown that the barriers have been removed.

12      As for *Oliver*, that case is contrary to previous opinions.  No other case has required an

13  ADA plaintiff to identify in their complaint every barrier that they wish removed.  In fact, on

14  three separate occasions, the Ninth Circuit has outright refused to adopt a requirement that all

15  barriers must be identified in the complaint.  *Oliver* is contrary to the previous opinions of *Skaff*

16  *v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832 (9th Cir. 2007), *Doran v. 7-Eleven, Inc.*,

17  524 F.3d 1034 (9th Cir. 2008), and *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939 (9th

18  Cir. 2011).  Because *Oliver* is in conflict with these cases, the Court should stay proceedings and

19  certify this matter for an interlocutory appeal.  Alternatively, Chapman requests a second site

20  inspection to document what changes have been made by Chevron and to then amend the

21  complaint so as to give Chevron notice of the specific barriers at issue.

22      *Legal Standard*

23      Title III of the ADA (42 U.S.C. § 12181 et seq.) prohibits discrimination on the basis of

24  disability in the "full and equal enjoyment of the goods, services, facilities, privileges,

25  advantages, or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a);

26

27          [2]The Magistrate Judge ordered that no "unnoticed" site inspections of the Station would be permitted.
    See Court's Docket Doc. No. 26.  The Magistrate Judge ordered that additional site inspections could occur only
28  through leave of court and by a showing of good cause.  See id.

1  Oliver v. Ralphs Grocery Co., - - - F.3d - - -, 2011 U.S. App. LEXIS 17022, *2 (9th Cir. Aug. 17,

2  2011).  The ADA requires that new business facilities be "readily accessible to and usable by

3  individuals with disabilities," unless this would be "structurally impracticable."  42 U.S.C. §

4  12183(a)(1); Oliver, 2011 U.S. App. LEXIS 17022 at *2; see Chapman v. Pier 1 Imps. (U.S.),

5  Inc., 631 F.3d 939, 945 (9th Cir. 2011).  For business facilities that existed prior to the enactment

6  of the ADA, discrimination on the basis of disability includes "a failure to remove architectural

7  barriers . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A); Oliver,

8  2011 U.S. App. LEXIS 17022 at *2 n.3; Chapman, 631 F.3d at 945; Hubbard v. 7-Eleven, Inc.,

9  433 F.Supp.2d 1134, 1144 (S.D. Cal. 2006).  "In general, a facility is readily accessible to and

10 usable by individuals with disabilities if it meets the requirements promulgated by the Attorney

11 General in the 'ADA Accessibility Guidelines,' or the 'ADAAG,' which is essentially an

12 encyclopedia of design standards."  Oliver, 2011 U.S. App. LEXIS 17022 at *3; see also

13 Chapman, 631 F.3d at 945-46.  If a place of public accommodation is inconsistent with the

14 ADAAG, then a plaintiff may bring a civil action on the basis that the offending design feature

15 constitutes a barrier that denies full and equal enjoyment of the premises.  Oliver, 2011 U.S. App.

16 LEXIS 17022 at *3; see Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  A private

17 plaintiff can only obtain injunctive relief (i.e. removal of the barrier) under Title III of the ADA,

18 and may not obtain monetary damages.  Oliver, 2011 U.S. App. LEXIS 17022 at *3; Molski, 481

19 F.3d at 730.  As such, "a defendant's voluntary removal of alleged barriers prior to trial can have

20 the effect of mooting [an] ADA claim."  Oliver, 2011 U.S. App. LEXIS 17022 at *3; see

21 Chapman v. Starbucks Corp., 2011 U.S. Dist. LEXIS 3570, *11 (E.D. Cal. Jan. 6, 2011); Stevey

22 v. 7-Eleven, Inc., 2009 U.S. Dist. LEXIS 53801, *33-*34 (E.D. Cal. Jun. 25, 2009); Hubbard,

23 433 F.Supp.2d at 1145; Parr v. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1087 (D. Haw.

24 2000); Independent Living Res. v. Oregon Arena Corp., 982 F.Supp. 698, 771 (D. Or. 1997).

25        *Discussion*

26        **A.     Effect Of *Oliver*'s Holding On Rule 8 Notice**

27             In *Oliver*, the Ninth Circuit reviewed a district court's grant of summary judgment in

28 favor of a grocery store.  See Oliver, 2011 U.S. App. LEXIS 17022 at *1-*2.  At summary

7

1  judgment, the district court refused to consider barriers that were not identified in the complaint,

2  but were identified by an expert witness report.  See id. at *8.  The Ninth Circuit affirmed the

3  district court's refusal to consider barriers that were not identified in the complaint.  See id. at

4  *16.  The Ninth Circuit explained: "In sum, for purposes of Rule 8, a plaintiff must identify the

5  barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint

6  itself; a defendant is not deemed to have fair notice of barriers identified elsewhere."  Id.

7          To support his ADA causes of action, Chapman is relying on the 14 barriers that are

8  identified in Card's expert report to support.  However, only the first barrier is identified in the

9  FAC.  Pursuant to Oliver, all of the barriers identified by Card, except for the barrier dealing with

10  the "Van Accessible" sign, are not properly a part of this case because they are not part of the

11  FAC.  See id.

12          Summary judgment on any ADA claims that are based on barriers not identified in the

13  FAC is appropriate.[3]  See id.

14          **B.**     **Barriers Identified By Card**[4]

15          1.      "Van Accessible" Sign

16          Card opined that the lettering on the "Van Accessible" sign is too large because the

17  lettering of "Accessible" is 1 ½ inches.  Chapman contends that the California Municipal Manual

18  on Uniform Traffic Control Devices ("MUTCD") requires that the letters of the word "Van" be

19  1 ½ inches, while the letters in the word "Accessible" be 1 inch.  Chapman further contends that

20  a violation of the MUTCD is a violation of the ADA.  However, Oliver has specifically dealt

21

22          [3]The Court declines to grant an interlocutory appeal.  First, as discussed below, a number of the alleged
23  ADA barriers are moot, while others are not ADA barriers at all.  Second, Oliver cited Chapman and Doran.  The
     Court can only assume that the Oliver panel was aware of these decisions.  As for Skaff, the question at issue in that
24  case was whether the plaintiff had made sufficient allegations to show an injury in fact, and thus standing.  See Skaff,
     506 F.3d at 840-41.  The relevant discussion in Oliver was not about standing, rather it was about Rule 8's
25  requirements for alleging a Title III ADA claim and identifying architectural barriers.  See Oliver, 2011 U.S. App.
     LEXIS 17022 at *13.  In reaching its conclusions, Oliver relied on Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d
26  963, 968-69 (9th Cir. 2006), and Pickern dealt with Rule 8's notice requirements.  Because Oliver is directly on point
     and is highly similar to the case at bar, the Court must follow Oliver.

27          [4]As discussed above, with the exception of the "Van Accessible" sign, the barriers identified by Card are
28  not part of this case because they violate Rule 8.  See Oliver, 2011 U.S. App. LEXIS 17022 at *16.  As alternative
     holdings, however, the Court will analyze and dispose of the other barriers identified by Card.

1   with this issue and found that a violation of the MUTCD is not a per se violation of the ADA.

2   See Oliver, 2011 U.S. App. LEXIS 17022 at *20-*21.  Since no ADA or ADAAG provision is

3   identified, the letter dimensions of the "Van Accessible" sign do not violate the ADA.  See id.

4       Alternatively, the sign has been replaced and now complies with the dimensions urged by

5   Chapman.  See O'Kelley Dec. ¶ 4; Perkins Dec. ¶ 8 & Ex. A.  This claim is therefore moot.  See

6   Oliver, 2011 U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11;

7   Stevey, 2009 U.S. Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96

8   F.Supp.2d at 1087; Independent Living, 982 F.Supp. at 771.

9       Summary judgment on ADA claims based on the "Van Accessible" sign is appropriate.[5]

10      2.      Handrails for Ramp[6]

11      Card opined that a ramp at the Station is longer than 72 inches and, as a result, ADAAG §

12  4.8.5 requires that handrails be installed.  Chevron argues that Card is incorrect because the ramp

13  at issue is a "curb ramp," and ADAAG § 4.8.5 specifically states that handrails are not required

14  for "curb ramps."  Chapman argues that the ramp at issue is not a "curb ramp" for four reasons:

15  it has a landing, it has edge white protection, it runs parallel to the curb instead of through the

16  curb, and it does not have detectable warnings.  See Opposition at 27:1-9.

17      ADAAG § 4.8.5 provides inter alia that if a ramp has a horizontal projection greater than

18  72 inches, "then it shall have handrails on both sides.  Handrails are not required on curb ramps .

19  . . ."  ADAAG § 3.5 defines a curb ramp as a "short ramp cutting through a curb or built up to it."

20  Here, the picture of the ramp at issues shows that the ramp cuts through curbs.  The ramp cuts

21  through a curb that separates one sidewalk from another sidewalk and grass/vegetation, and also

22  appears to cut through a curb that separates the parking lot from the sidewalk.  ADAAG § 4.7.5

23  states that "curb ramps with returned curbs may be used where pedestrians would not normally

24  _____

25      [5]The Court notes that it is far from clear that this is a "barrier" of any kind.  Chevron argues that Chapman
26  is in effect arguing that the sign is "too visible" because the word "Accessible" is 1 ½ inches instead of 1 inch.  This
    seems to be a fair point.  Nevertheless, for purposes of this motion, it is enough to hold that no ADA claim is stated
27  pursuant to Oliver.

28      [6]Pictures of the ramp at issue are found at page 27 of Plaintiff's opposition and at photographs 7 and 8 of
    the Casper report.

9

1  walk across the ramp (see Figure 12(b))."  Figure 12(b) states that where "the ramp is completely

2  contained within a planting strip or other non-walking surface, so that pedestrians would not

3  normally cross the sides, the curb ramp sides can have steep sides including vertical returned

4  curbs."  Here, the elevated, white painted sides/curbs of the ramp separate grass/vegetation on

5  one side and parking spaces on the other side.  The vegetation and the parking spaces are separate

6  from the sidewalk and the ramp at issue.  The picture shows that the areas involved are distinct,

7  and that the sidewalk is the area that pedestrians are intended to use.  The picture also indicates

8  that a portion of the end of the ramp has a yellow, detectable warning that consists of raised,

9  truncated domes.  Cf. ADAAG § 4.7.7 ("A curb ramp shall have a detectable warning complying

10  the § 4.29.2."), 4.29.2, 4.29.5.  However, the evidence and arguments presented do not make it

11  clear whether the detectable warnings comply with ADAAG § 4.7.7.  Additionally, Chevron's

12  expert, Neal Casper, has stated that the ramp at issue does not require handrails because it is a

13  curb ramp, and therefore exempt from the handrail requirement.  See Casper Report at Issue 2

14       In light of the above, it appears that the ramp is a "curb ramp" because the ramp cuts

15  through curbs.  See Casper Report at Issue 2 & Photograph 7.  The "curb ramp" runs parallel to a

16  parking area and intersects a second sidewalk.  The curbs that the "curb ramp" cut are those that

17  separate the second sidewalk and grass, and the parking spaces.  The elevated, white-painted

18  returned curbs at the sides of the ramp appear to be appropriate because those curbs separate

19  areas that are not intended for pedestrian use.  The section of grass or vegetation is conspicuous

20  in separating sections of sidewalk, and the parking spaces are clearly intended as a place for cars

21  to park and not for a pedestrian pathway.  While the Court cannot say whether ADAAG § 4.7.7's

22  requirement of detectable warnings has been followed, non-compliance does not mean that the

23  ramp is not a "curb ramp."  Non-compliance with ADAAG § 4.7.7 simply means a possible

24  violation of § 4.7.7.  However, a violation of ADAAG § 4.7.7 is not alleged in the FAC.  There

25  has been an insufficient showing of an ADAAG § 4.8.5 violation.

26       Summary judgment on ADA claims based on the absence of handrails is appropriate.

27       3.    "Short Cut" Walkway Too Narrow

28  Chevron argues that Card measured the "short cut" pathway at issue to be 42 ½ inches

wide, which complies with the ADA's requirement of 36 inches wide.  See DUMF Nos. 18, 19.
Chapman concedes there is no ADA violation because the pathway exceeds the 36 inch
minimum under the ADAAG.  See Opposition at 29:7-9.

Because Chapman concedes that there is no ADA violation, summary judgment on ADA
claims based on a walkway or "short cut" that is too narrow is appropriate.

4.    Misleading Directional Sign

Chevron argues that there is no regulation that addresses "potentially misleading"
directional signs, thus there is no ADA violation.  Chapman points to a California regulation, but
does not mention an ADAAG regulation or ADA requirement.

There are problems with Chapman's claim.  First, Chapman cites no ADAAG or ADA
requirement that relates to "potentially misleading" directional signs.  Therefore, the "potentially
misleading" sign is not a "barrier" under the ADA.  Second, Chevron has removed the
"potentially misleading" sign.  See O'Kelley Dec. ¶ 5; Perkins Dec. ¶ 9 & Ex. B.  Because the
sign has been removed, any ADA claim based on this "potentially misleading" sign is now moot.
See Oliver, 2011 U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11;
Stevey, 2009 U.S. Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96
F.Supp.2d at 1087; Independent Living, 982 F.Supp. at 771.

Summary judgment on ADA claims based on "potentially misleading" directional signs is
appropriate.

5.    Exterior Restroom Door Requiring "Too Much" Force To Open

Chevron argues that the 2010 ADAAG does not reference exterior doors like the door at
issue, and the 1991 ADAAG (§ 4.13.11) expressly refrains from establishing force pressure
requirements for exterior doors.  Chapman contends that, while the ADAAG is silent on the
amount of force pressure required to open an exterior door, the Ninth Circuit holds that a
business must maintain the usability of a business's accessible features.  Thus, while any door
technically would comply with the ADAAG, such compliance would not count "if disabled
patrons cannot use it."

There are problems with this claim.  First, there are no ADA or ADAAG regulations that

set maximum pounds of pressure to open an exterior door.  Thus, Chapman has not shown that the exterior bathroom door is a "barrier" under the ADA.[7]  Second, Card relied primarily on California regulations that require a maximum opening force of 5 pounds.  See Card Report at pp. 11-12.  However, Chevron has replaced the "closer" of the door, and the door now requires less than 5 pounds of pressure to open.  See O'Kelley Dec. ¶ 6; Perkins Dec. ¶ 10.  Thus, the "barrier" has been mooted.  Oliver, 2011 U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11; Stevey, 2009 U.S. Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96 F.Supp.2d at 1087; Independent Living, 982 F.Supp. at 771.  Summary judgment on ADA claims based on the force necessary to open the exterior restroom door is appropriate.

  6. Lavatory Knee Clearance

  Card reported that knee and leg clearances did not meet the required 8 inches and 27 inches measurements.  See Card Report at pp. 13-14.  However, Chevron has submitted evidence that it has made corrections and the lavatories now meet the 8 inch and 27 inch requirements of ADAAG § 4.19.2 and Figure 31.  See O'Kelley Dec. ¶ 7; Perkins Dec. ¶ 11 & Ex. D.  Thus, ADA claims based on knee/leg clearances are now moot.  See Oliver, 2011 U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11; Stevey, 2009 U.S. Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96 F.Supp.2d at 1087; Independent Living, 982 F.Supp. at 771.

  Summary judgment on ADA claims based on lavatory knee/leg clearances is appropriate.

  7. Centerline of Water Closet

  Chevron argues that Card measured the centerline of the water closet at 18 ¾ inches,  and

---

[7]Chapman cites *Fortyune v. AMC, Inc.*, 364 F.3d 1075, 1084-85 & n.4 (9th Cir. 2004) for the proposition that businesses must maintain the usability of accessible features, such as doors.  However, *Fortyune* dealt with a business's policy regarding its own enforcement of ADA provisions, specifically a movie theater's refusal to require a non-disabled patron to move from a designated wheelchair viewing area.  *Fortyune* did not address "usability" of accessible features.  Nevertheless, even accepting Chapman's reading of *Fortyune*, there is no evidence that the exterior restroom door at issue was unusable.  There is no evidence that Chapman was unable to open the exterior restroom door, nor is there evidence that a substantial percentage of disabled individuals who are similarly situated to Chapman would be unable to open the door.  All that is known is that Card found that 7 pounds of pressure was necessary to open the door.  See Card Report at 11-12.  This alone does not establish that the door was "unusable."

1   measured the clear floor space at 41 ½ inches, when the ADAAG sets limits of 18 inches and 42

2   inches respectively.  However, the Casper expert report establishes that the ½ inch and the ¾

3   inch differences are within industry tolerances for the field conditions.  Thus, there is no barrier.

4   Chapman argues *inter alia* that Chevron seeks to show that the measurements are within

5   dimensional tolerances, yet "fails to cite any evidence demonstrating what those dimensional

6   tolerances are."  Opposition at 31:15-16.

7        ADAAG § 3.2 is entitled "Dimensional Tolerances" and reads: "All dimensions are

8   subject to conventional building industry tolerances for field conditions."  Chevron's expert

9   Casper is a certified access specialist and a certified general contractor with over thirteen years of

10  experience in commercial construction, and seven years experience in construction related

11  accessibility areas for commercial facilities.  See Casper Report at Issues 7, 8.  Casper also

12  provides ADA consultation and training.  See id.  With respect to this case, Casper indicates that

13  18 ¾ inches and 41 ½ inches are acceptable and that ½ and ¾ inches are "well within industry

14  tolerance" for field conditions, and thus fully comply with the ADA.  See id.

15       As Chapman points out, it is true that Casper does not state what the precise parameters

16  of the industry tolerances are for this water closet.  However, that Casper did not provide

17  additional detail by explaining exactly how much the water closet's dimensions are within

18  industry tolerance, or state what the specific tolerance dimensions are, does not destroy the

19  probative effect of his opinion.  The key question is not necessarily what the industry tolerances

20  are, rather the key is whether the dimensions are within the tolerances.  Casper's opinion that the

21  dimensions of this water closet "are well within industry tolerance" is a substantive opinion that

22  shows compliance and answers the pertinent question.  Cf. Fed. R. Evid. 704(a) (expert opinion

23  not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact).

24  Casper is clearly qualified to render an expert opinion on industry tolerance, and his opinion is

25  sufficient to meet Chevron's burden as the moving party.  See Nissan Fire, 210 F.3d at 1103.

26  Chapman has offered no contrary evidence to refute Casper.

27       Because the 18 ¾ inch and 41 ½ inch dimensions of the water closet are within the

28  "conventional building tolerances," summary judgment on this ADA claim is appropriate.

1    8.    Exterior & Interior Restroom Signs Do Not Include The ISA

2        Card identified an absence of ISA signs as violations of the ADA.  However, Chevron

3    submitted photographs and two declarations that confirm that it has placed new signs that contain

4    the ISA on the interior of the Station and on the exterior wall.  See O'Kelley Dec. ¶¶ 9, 11;

5    Perkins Dec. ¶¶ 13, 15 & Ex. F, H.  In light of this evidence, any ADA claims based on the lack

6    of an ISA on the interior or exterior of the Station (as identified by Card) are now moot.  Oliver,

7    2011 U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11; Stevey,

8    2009 U.S. Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96 F.Supp.2d

9    at 1087; Independent Living, 982 F.Supp. at 771.

10       Summary judgment on ADA claims based on the absence of interior and exterior ISA

11   signs is appropriate.

12   9.    Gas Pump Sign

13       Card found an ISA sign at Gas Pump 19, but an "additional assistance" sign was not

14   posted near Gas Pump 19.   However, Chevron has declared that it has placed an "additional

15   assistance" sign on the canopy support column that is near to, and visible from, the accessible

16   fueling pump.  See O'Kelley Dec. ¶ 10; Perkins Dec. ¶ 14.  Chevron has also submitted

17   photographs that show an "additional assistance" sign that is affixed to the metal canopy support

18   immediately adjacent to Gas Pump 19.  See Perkins Dec. ¶ 14 & Ex. G.  The sign is visible from

19   Gas Pump 19.  See id.  In light of this evidence, Chapman's ADA claims based on the lack of an

20   "additional assistance" sign near Gas Pump 19 are now moot.  Oliver, 2011 U.S. App. LEXIS

21   17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11; Stevey, 2009 U.S. Dist. LEXIS

22   53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96 F.Supp.2d at 1087; Independent

23   Living, 982 F.Supp. at 771.

24       Summary judgment on ADA claims based on the absence of interior an exterior ISA signs

25   is appropriate.[8]

26

27       [8]Chapman relies on an ADA business brief issued by the attorney general to argue that there is an ADA
28   violation.  Chevron disputes the effect of the business brief.  Because the "additional assistance" sign has been
     moved, it is unnecessary to resolve the status of the business brief.

1        10.     Width of Merchandise Aisle

2        Chevron argues that Card measured two sections of the aisles inside the Station that are

3   38 inches and 42 inches wide respectively, but the ADA only requires aisles to be 36 inches

4   wide.  See DUMF 35.  Chapman concedes that there is no ADA violation because the aisles are

5   at least 36 inches wide.  See Opposition at 34:21-22.

6        Because Chapman concedes that there is no ADA violation, summary judgment on ADA

7   claims based on the 38 inch and 42 inch wide merchandise aisles is appropriate.

8        11.     Width Of The Aisle Near The Coffee Island

9        Card opines that the end of an aisle that is near a coffee island is 30 ½ inches wide at one

10  point, but the ADAAG requires merchandise aisles to be at least 36 inches wide.[9]  Chevron

11  argues that the ADA requires merchandise to be located on an accessible route with a 36 inch

12  clearance, and the Station's store provides 36 inch wide aisles to all merchandise.  The coffee

13  island and merchandise at the area measured by Card can be accessed by two aisles that are 36

14  inches wide.  Further, aisles are permitted to terminate, and the location of an intersecting point

15  (which was the point measured by Card) does not constitute an ADA violation.  Further, the deli

16  counter has been moved and there is now 33 inches of clearance at the point measured by Card,

17  which is the maximum space allowable for the particular point.  Chapman argues that Chevron

18  has not adequately shown that widening the aisle near the coffee island is "not readily

19  achievable."  Without evidence that obtaining 36 inches at the pertinent point is not readily

20  achievable, Chevron cannot avail itself of reasonable accommodations in lieu of removing

21  architectural barriers.

22       There are problems with Chapman's theory.  First, ADA Figure 403.5.1 explains that an

23  accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of

24  no more than 24 inches, so long as the 32 inch segments are at least 48 inches apart.  See

25  Chevron Reply Request for Judicial Notice Ex. C; ADA Figure 403.5 & 403.5.1 at

26  http://www.access-board.gov/ada-aba/final.cfm.  Here, the area at issue is now 33 inches across.

27

28       [9]ADAAG § 4.3.3 states in part that the "minimum clear width of an accessible route shall be 36 inches
    except at doors."

15

See O'Kelley Dec. ¶ 13; Perkins Dec. ¶ 17 & Ex. J.  Further, the area involves only one "pinch point," so there are no segments, and the picture of the area indicates that the "pinch point" is under 36 inches for a length of less than 24 inches.  See Card Report at 35-36.  Thus, the end of the aisle is compliant.  See Chevron Reply Request for Judicial Notice Ex. C; ADA Figure 403.5 & 403.5.1 at http://www.access-board.gov/ada-aba/final.cfm.  Second, Chapman does not refute the proposition that the coffee island and associated merchandise around the area measured by Card are accessible via aisles that are at least 36 inches wide.  See DUMF 39.  ADAAG § 2.2 reads, "Departures from particular technical and scoping requirements of this guidelines by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility."  See also Antoninetti v. Chipotle Mexican Grill, Inc., 614 F.3d 971, 978 (9th Cir. 2010); Chaffin v. Kan. State Fair Bd., 348 F.3d 850, 860 (10th Cir. 2003).  If only one portion of the store has one "pinch point," and that point is at an intersection of aisles, and the associated merchandise is accessible, and all other points of the store are accessible by 36 inch wide aisles, it would appear that the design of the Station's interior provides substantially equivalent access to Chapman.  See ADAAG § 2.2.  Third, Casper has indicated that the 30 ½ inch pinch point is permissible because the point represents the termination of aisles.  See Casper Report at Issue 13.  Chapman has presented no expert testimony to refute this particular opinion.

For the above reasons, summary judgment on ADA claims based on the "pinch point" at the end of the store near the coffee island is appropriate.

12.    ICEE Lids

Card opined that both large and medium ICEE lids are out of reach for wheelchair bound customers.  However, Chevron has declared that it has moved a supply of medium and large ICEE lids to lower heights and underneath the ICEE dispenser.  See O'Kelley Dec. ¶ 15.  Chevron has also submitted photographs that show a supply of large and medium ICEE lids that are indeed at a lower height (30 inches to the crest of the lids) and underneath the ICEE machine.  See Perkins Dec. ¶ 18 & Ex. K.  With respect to a disabled individual in a wheelchair and the ability to reach merchandise, the minimum height for merchandise is 9 inches, and the maximum

16

1    height for merchandise is 54 inches.  See ADAAG § 4.2.6.  In light of the evidence, any ADA

2    claims based on the accessibility of the large and medium ICEE lids are now moot.  Oliver, 2011

3    U.S. App. LEXIS 17022 at *3; Starbucks, 2011 U.S. Dist. LEXIS 3570 at *11; Stevey, 2009 U.S.

4    Dist. LEXIS 53801 at *26-*27; Hubbard, 433 F.Supp.2d at 1145; Parr, 96 F.Supp.2d at 1087;

5    Independent Living, 982 F.Supp. at 771.

6           Summary judgment on ADA claims based on the location of the ICEE lids is appropriate.

7           13.    Asphalt Concrete Travel Route

8           At the end of his report, Card stated that a newly constructed "accessible route of travel"

9    is constructed using asphalt concrete instead of concrete.  See Card Report at 40-41.  Card stated

10   that building up and using thick amounts of asphalt concrete is problematic because that material

11   is subject to distortion from heat and vehicular traffic, and that the distortion "can easily render

12   the cross slope out of compliance."  Id.  Chevron argues that Card relies on no guidelines or

13   existing condition, and in fact found the route to be compliant.  Chevron contends that

14   generalized concerns about potential issues are irrelevant.  Chapman argues that Card's report

15   provides a sufficient basis for believing that the route will become distorted and inaccessible.

16   Thus, Chapman has a reasonable basis for believing that discrimination will occur in the future,

17   which makes injunctive relief appropriate.

18          Chapman has failed to show a violation of the ADA.  Card's opinion does not disclose an

19   actual violation of the ADA or the ADAAG.  No requirement has been identified that mandates

20   the use of specific and particular building materials, or that it is a violation of the ADA or the

21   ADAAG to use asphalt concrete on the travel route at issue.  The ADA provides for injunctive

22   relief for a plaintiff if there are "reasonable grounds for believing that [the plaintiff is] about to be

23   subjected to discrimination."  42 U.S.C. § 12188(a)(1); Pickern v. Holiday Quality Foods, Inc.,

24   293 F.3d 1133, 1136 (9th Cir. 2002).  Here, there is nothing to indicate that a violation of the

25   ADA is imminent or that Chapman is "about to be" subjected to discrimination.  Card does not

26   state that the route is in imminent danger of becoming non-compliant or that the route is

27   currently non-compliant or that the route will shortly become non-compliant.  In its essence,

28   Card's opinion is simply that other materials would have been better in constructing the route

because those materials would have lasted longer. However, all material eventually breaks down and deteriorates. There is no evidence whatsoever about how long the asphalt concrete route will last. The route at issue is *newly constructed* and compliant with the ADA. There is no evidence that even remotely indicates that Chapman is "about to suffer" discrimination relative to the concrete asphalt travel route.

Because there is no current violation of the ADA, and because no evidence indicates that Chapman is about to suffer discrimination relative to the concrete asphalt travel route, summary judgment on this claim is appropriate.


**C.**   **Request For Inspection & Request For Sanctions**

As part of the opposition, Chapman requests that the Court allow an additional inspection of the Station and sanction Chevron for correcting/removing the barriers identified by Card. Plaintiff relies on *Stevey v. 7-Eleven, Inc.*, 2009 U.S. Dist. LEXIS 53801, *33-*34 (E.D. Cal. Jun. 25, 2009) for both requests. The Court will not grant Plaintiff's requests.

With respect to a second inspection, the Court directed Chevron to submit photographs that demonstrate that it had in fact made changes with respect to the alleged barriers identified by Card. That is, the Court directed that evidence in addition to the O'Kelley declaration be provided. The Court then gave Plaintiff the opportunity to respond to the photographs. Photographs, as well as an additional sworn declaration, were submitted by Chevron. The photographs and additional sworn declaration confirm the original representations made in the O'Kelley declaration, and there is nothing to indicate that the photographs are fraudulent or that the representations made in the declarations are false.[10] The nature of the barriers that the Court has determined are moot can be seen by the photographs. Chapman has not shown that an additional inspection is necessary.[11]

---

[10] Plaintiff's only response to the photographs is to request that Card be allowed to again inspect the Station. See Court's Docket Doc. No. 47.

[11] Chapman also indicates that an additional inspection would be allow him to amend his complaint and include the previously omitted barriers found by Card. However, Card conducted his inspection prior to Chapman filing the FAC. It is unknown why the barriers Card found could not have been included in the FAC. Further, as discussed above, the barriers identified are either moot or not ADA barriers, so amendment would be futile.

1    With respect to the request for sanctions, attorney's fees were awarded in *Stevey* as a

2    sanction for the failure to follow Rule 26's expert disclosure requirements, they were not awarded

3    for 7-Eleven's removal of barriers.  See *Stevey*, 2009 U.S. Dist. LEXIS 53801 at *37-*38.

4    Further, it is worth noting that *Stevey* held with respect to mootness: "Because a private ADA

5    plaintiff is limited to seeking injunctive relief and attorney's fees, a plaintiff's ADA claim is

6    moot if the defendant makes the precise alterations or accommodations that the plaintiff sought

7    to require with an injunction."  Id. at *26-*27.  As discussed above, many of the precise

8    alterations/accommodations sought by Chapman through the Card report have been made by

9    Chevron.

10    Additionally, the Court fails to see harm to Chapman.  The object of a Title III ADA

11    lawsuit is the removal of barriers to access and enjoyment of a business.  If those barriers are

12    removed prior to a trial, then costs and fees and other resources that would have been devoted to

13    the trial are saved.  Further, the sooner a barrier is removed, the sooner an ADA plaintiff benefits

14    since monetary relief is unavailable.  The Court fails to see how Chapman "wasted thousands of

15    dollars and countless attorney hours" on a now "worthless" expert report.  See Opposition at 40.

16    With some exception, many of the alleged barriers identified by Card have been removed.

17    Chapman testified that he considers himself a "champion of the disabled."  PUMF 63.  As such,

18    Chapman should be pleased that these later-identified barriers have been removed.  The Court

19    will not sanction a defendant who voluntarily corrects alleged ADA barriers.

20

21    **D.    State Law Claims**

22    The Court has jurisdiction over this case through the presence of a federal question,

23    namely Chapman's ADA claims.  See FAC at ¶¶ 3, 4.  The Court has supplemental jurisdiction

24    over Chapman's state law claims.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to

25    exercise jurisdiction over supplemental state law claims if "the district court has dismissed all

26    claims over which it has original jurisdiction."  The general rule is "when federal claims are

27    dismissed before trial . . . pendent state claims should also be dismissed."  Religious Tech. Ctr v.

28    Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992); Scholar v. Pacific Bell, 963 F.2d 264, 268

1  n.4 (9th Cir. 1992); Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985).  Here, there are no

2  viable ADA claims as explained above.

3        Chevron requests that the Court dismiss the ADA claims and decline to exercise

4  supplemental jurisdiction over the state law claims.  See Court's Docket Doc. No. 27-1 at 2:9-11.

5  In opposition, with respect to 28 U.S.C. § 1367(c)(3), Chapman argues that there exists genuine,

6  material, disputed facts that preclude summary judgment.  However, since the Court has found

7  that summary judgment is appropriate on all of the ADA claims, this argument is not persuasive.

8  Cf. City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1008 (9th Cir. 2010)

9  ("Because the district court did not err in granting summary judgment on the federal claims, it

10  did not abuse its discretion in dismissing the state-law claims.").  The parties have not identified

11  a sufficient basis for the Court to retain jurisdiction, and the Court itself sees none.  Cf.

12  Starbucks, 2011 U.S. Dist. LEXIS 3507 at *20-*22.

13        Accordingly, the Court will decline to exercise supplemental jurisdiction over Chapman's

14  state law claims.  See City of Colton, 614 F.3d at 1008; Bryant, 289 F.3d at 1169; Wollersheim,

15  971 F.2d at 367-68; Scholar, 963 F.2d at 268 n.4; Schultz, 759 F.2d at 718; Starbucks, 2011 U.S.

16  Dist. LEXIS 3507 at *20-*22.

17

18                              **CONCLUSION**

19        Summary judgment in favor of Chevron on Chapman's ADA claims are appropriate.  The

20  vast majority of the alleged ADA barriers are not properly before the Court as the barriers were

21  not identified in the FAC.  Further, the evidence presented shows that some of the items claimed

22  to be barriers do not violate the ADA.  Other alleged ADA barriers have been corrected in that

23  Chevron has made the changes identified by Chapman.  Given Chevron's responsiveness to the

24  alleged ADA barriers, the Court does not see any indication that Chapman will be subject to any

25  ADA barriers or ADA discrimination from Chevron.

26        With respect to Chapman's state law claims, the Court will decline to exercise

27  supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

28

Accordingly, IT IS HEREBY ORDERED that:

1.     Defendants' motion for summary judgment on each of Plaintiff's ADA claims is
       GRANTED;

2.     The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state
       law claims pursuant to 28 U.S.C. § 1367(c)(3); and

3.     The Clerk shall enter judgment in favor of Defendants and CLOSE this case.


IT IS SO ORDERED.

Dated:   __October 4, 2011__                    _____

                                                CHIEF UNITED STATES DISTRICT JUDGE